719 So.2d 1130 (1998)
Raymond HARVEY
v.
BOGALUSA CONCRETE, INC.
No. 97 CA 2945.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*1131 Gregory D. Guth, New Orleans, LA, for plaintiff/appellant Raymond Harvey.
Robert J. May, Metairie, LA, for defendant/appellee Bogalusa Concrete, Inc.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
CARTER, Judge.
A workers' compensation claimant appeals the dismissal of his claim by the workers' compensation judge.

FACTS
Raymond Harvey filed a disputed claim for workers' compensation benefits alleging he sustained injuries from nitrogen textroxide[1] exposure at the Gaylord Chemical plant on October 23, 1995. Harvey claims he has been unable to work since December 1995, due to his symptoms of burning eyes, upset stomach, diarrhea, and headaches, which he alleges were caused by exposure to leaking chemicals from a tank car several hours before an explosion. Harvey was employed as a truck driver by Bogalusa Concrete, Inc. in Bogalusa, Louisiana. On October 23, 1995, Harvey worked from 7:00 a.m. to 3:00 p.m., and left the Gaylord premises soon after his shift ended. About an hour after Harvey left the Gaylord premises, a tank car filled with nitrogen tetroxide exploded and released its contents into the air.
After a trial on the merits, the workers' compensation judge dismissed Harvey's claim with prejudice. In written reasons for judgment, the workers' compensation judge indicated:
Since there is only speculation that the tank was leaking before the explosion and that claimant didn't complain at the time and had left work some time before the explosion, claimant was not in the course and scope of his employment when the alleged incident happened.
Harvey appealed the judgment of the workers' compensation judge with the following assignments of error:
1. The office of workers' compensation erred in holding that Raymond Harvey was not injured in the course and scope of his employment.
2. The office of workers' compensation erred in its piecemeal acceptance of the testimony of the defendant's litigation consulting physician which was not supported by a reading of his whole testimony.
3. The office of workers' compensation erred in rejecting the testimony of the claimant's treating physician without a valid basis for so doing.

DISCUSSION
An employee is entitled to receive benefits for a personal injury by an accident arising out of and in the course of employment. LSA-R.S. 23:1031. Accident is defined by the Workers' Compensation Act as an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. LSA-R.S. 23:1021(1).
A claimant must prove by a preponderance of the evidence that an employment accident occurred and that it had a causal relationship to the disability. If the testimony leaves the probabilities evenly balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, plaintiff's case must fail if the evidence shows only a *1132 possibility of a causative accident or leaves it to speculation or conjecture. See Prim v. City of Shreveport, 297 So.2d 421, 422 (La. 1974).
The workers' compensation judge's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or manifestly erroneous. Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2nd Cir.), writ denied, 536 So.2d 1200 (La.1988). For an appellate court to reverse a workers' compensation judge's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the workers' compensation judge or that the record establishes that the finding is clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the workers' compensation judge's finding. The reviewing court must review the record in its entirety to determine whether the workers' compensation judge's finding was clearly wrong or manifestly erroneous. See Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 883.
After reviewing the record, we find the workers' compensation judge did not err in dismissing Harvey's claim. The record does not support a finding that Harvey sustained an accident during the course and scope of his employment with Bogalusa Concrete for two reasons. First, there is insufficient proof that the tank car was actually leaking prior to the explosion. Second, the medical testimony establishes Harvey's mild physical abnormality is more likely related to his tobacco use than toxic exposure.
Harvey points to a newspaper article written after the explosion describing unofficial information that the tank car was probably leaking while Gaylord workers were attempting to unload it some time before the explosion occurred. However, there was no evidence from any source indicating when the alleged leak was noticed and when Gaylord began to act. In our opinion, the newspaper article relied upon by Harvey is mere speculation. Although Harvey testified he was in close proximity to the tank car when he delivered the concrete, he did not describe any activity whatsoever involving the tank car that would indicate an awareness of a leak as insinuated by the newspaper article. No other Bogalusa Concrete employees, who delivered concrete to Gaylord Chemical prior to the explosion, reported any ill effects related to the alleged pre-explosion leak.
Harvey testified he began to experience burning eyes, upset stomach and a headache at work prior to the explosion. But according to Claudine Hughes, the office manager for Bogalusa Concrete, there is no record of Harvey complaining of any problems on the day of the explosion. The record does not establish when Harvey actually informed his employer he was having any type of health complaints. According to Hughes, Bogalusa Concrete sent all of its employees to Dr. Lemaire shortly after the explosion as a precaution, whether they were complaining of any symptoms or not. Dr. Lemaire's medical records were not introduced into the record. Harvey testified Dr. Lemaire referred him to Dr. Jackson for further tests, *1133 but the record indicates he was not examined by Dr. Jackson because there was no insurance approval when he went to Dr. Jackson's office.
Based on a referral from his attorney, Harvey sought treatment with Dr. Henry Evans, a family practitioner who is not board certified in any specialty. Dr. Evans treated Harvey from December 1995 until the time of trial and indicated Harvey's condition rendered him disabled from working. Dr. Evans received approximately 1,000 referrals from the law firm that represented Harvey in connection with the Bogalusa explosion. Through his deposition testimony, Dr. Evans explained Harvey complained of coughing, shortness of breath, severe headaches, nausea, vomiting, and restlessness. Dr. Evans opined that Harvey's continued problems were due to exposure to nitrous dioxide in a sufficient concentration to warrant substantial damage.
Dr. Evan's opinion is undermined in several places throughout the record. The history Harvey gave Dr. Evans indicated he was on Gaylord premises the entire day prior to the explosion, specifically from 6:00 a.m. to 3:00 p.m.; however, this was contradicted by Harvey's own testimony that he was only on the premises when he was delivering concrete. Harvey testified he made several trips between Bogalusa Concrete and Gaylord Chemical to load his truck on the day of the explosion. Dr. Evans conceded if the history Harvey related to him were different, it would change his opinion relating of Harvey's problems to the toxic exposure.
Dr. Evans stated that given the severity of Harvey's exposure, he would expect other workers in the area to have the same symptoms. However, no other Bogalusa Concrete drivers complained of any problems associated with being on the Gaylord premises prior to the explosion. Furthermore, Dr. Evans testified he was aware the tank car had been leaking prior to the explosion through information he obtained from newspaper articles, Internet articles, and information circulated in the area. However, none of these sources were introduced into evidence.
Dr. Evans noted it was particularly significant that Harvey lived in the Bogalusa area because those residents were susceptible to the effects of the chemical release. Dr. Evans admitted that Harvey's most significant symptoms appeared after the explosion. Harvey testified he was at his home approximately seven miles from the Gaylord plant when the actual explosion occurred. However, Hughes testified she overheard Harvey indicating he was across the street from the Gaylord plant, at the Southern Auto parts store, and that he actually witnessed the explosion.
According to the history Harvey gave to Dr. Evans, he indicated he smoked three packs of cigarettes a day. Dr. Evans considered Harvey to be a heavy smoker. Dr. Evans conceded that his findings regarding Harvey's physical condition were of a mild nature, and the tests he ran reflected a mild abnormality. Dr. Evans testified Harvey's background with tobacco played a significant part in the interpretation of Harvey's test results.
While noting his physical exam revealed mild physical effects, Dr. Evans indicated Harvey initially had papilledema, which suggested underlying neurological damage. According to Dr. Evans, Harvey saw a neurologist, a physiologist, and an opthamologist; however, he never received a copy of their reports or findings. Thus, there is no evidence Harvey suffered any neurological damage. Finally, Dr. Evans agreed that Harvey's subjective symptoms of headaches, and diarrhea were solely based on Harvey's complaints to him and were not independently verified.
At the request of Bogalusa Concrete, Harvey was examined by Dr. William Brooks Emory, a board certified internist with a subspecialty in pulmonology. Testifying by deposition, Dr. Emory could not relate any of Harvey's complaints to toxic exposure. Dr. Emory found Harvey's symptoms were disproportionate to any objective pulmonary radiographic or physical findings. Harvey denied ever smoking cigarettes to Dr. Emory and claimed he only smoked cigars.
Although Dr. Emory agreed that exposure to nitrogen dioxide could cause severe pulmonary irritation, the tests performed on Harvey *1134 indicated his pulmonary status was within normal limits. The mild pulmonary restriction suggested by the tests Dr. Emory performed was attributable to the effects of smoking. Dr. Emory further explained Harvey did not know he was exposed to nitrogen dioxide when he was at Gaylord Chemical, and if he was, it was only a small amount. This opinion is based on the fact Harvey was in an open area and if he was exposed to a high concentration of nitrogen dioxide, it would have immediately formed nitric acid when it contacted his mucous membranes. According to Dr. Emory, there would have been immediate effects. On the contrary, Harvey did not report any immediate symptoms or problems after his shift ended. Thus any abnormalities in Harvey's physical condition are unrelated to his presence at Gaylord Chemical prior to the explosion.

CONCLUSION
After review of the record in its entirety, we do not find the decision of the workers' compensation judge to be clearly wrong. Because we find there is ample evidence in the record to support the decision of the workers' compensation judge, we decline to specifically address Harvey's complaints regarding whether the worker's compensation judge properly weighed the testimony of Dr. Evans and Dr. Emory. The judgment of the workers' compensation judge is affirmed with all costs assessed to the claimant, Richard Harvey.
AFFIRMED.
NOTES
[1] Nitrogen tetroxide breaks down into nitrogen dioxide when it comes in contact with the air. Both are toxic substances.