809 So.2d 441 (2001)
Patsy LANG-PARKER
v.
UNISYS CORPORATION.
No. 2000 CA 0880.
Court of Appeal of Louisiana, First Circuit.
October 5, 2001.
*443 Michael B. Forbes, Hammond, Counsel for Plaintiff/Appellant Patsy Lang-Parker.
Stephen C. Resor, New Orleans, Counsel for Defendant/Appellee Unisys Corporation.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
GUIDRY, J.
Claimant appeals the judgment of the Workers' Compensation Judge (WCJ), denying her claim for additional benefits, vocational rehabilitation, and other expenses. We amend the judgment, in part, and as amended, affirm.

FACTUAL BACKGROUND
On June 15, 1998, claimant, Patsy Lang-Parker, a registered nurse licensed in Louisiana, *444 began working for Unisys Corporation ("Unisys") as a nurse analyst reviewing Medicaid billing and medical records for evidence of fraud. Claimant lives in Tickfaw, Louisiana, and was required to drive an hour to and from work as a consequence of her job being located in Baton Rouge.
On September 21, 1998, as claimant was placing a case folder on a shelf above her work station, she felt what she described as a "pop" in her back, followed by stiffness and pain. Nevertheless, she completed the work day and returned to work on the following day, at which time she reported the incident to her supervisor, Martha Dishongh. Ms. Dishongh prepared an accident report and instructed claimant to seek medical attention. Claimant left work for the remainder of the day and on the following day, she visited Dr. Ted Hudspeth's office, her primary care physician, but he was not available to see her. In Dr. Hudspeth's absence, claimant was examined by Dr. Hudspeth's physician assistant,[1] Bea Soto, who prescribed a pain reliever, muscle relaxant, and physical therapy. Ms. Soto further authorized claimant to return to work.
After seeing Ms. Soto, claimant missed work for the rest of the week and did not return to her job until Wednesday, September 30, 1998. She testified that she left before completing the work day due to pain. She further testified that she attempted to return to work on October 5, 1998, but again left early because of pain. Claimant has not returned to her job since October 5, 1998, nor has she worked anywhere since that date.
As a result of the accident, claimant received medical treatment from several sources. Following her examination by Ms. Soto, claimant sought chiropractic treatment from Dr. Anthony Zuppardo[2] and was also seen by an associate of Dr. Hudspeth, Dr. Michael Dunn, who ordered an MRI of her lumbar spine; it revealed several abnormal discs. Unisys then referred claimant to Dr. Randall Lea, an orthopedist, for evaluation and treatment. Dr. Lea treated claimant from October 1998 to December 1998.
Claimant was next seen by Dr. E. Thomas Cullom, III, a neurosurgeon, on the recommendation of Dr. Zuppardo and Dr. Hudspeth. Dr. Cullom first examined claimant on November 3, 1998, and in December 1998, she chose Dr. Cullom as her primary care physician. Claimant treated with Dr. Cullom through June 1999. While treating claimant, Dr. Cullom referred her to Dr. Randolph Roig, a doctor of rehabilitation and physical medicine, for administration of sacroiliac joint injections and further evaluation. Claimant was seen by Dr. Roig from February to June 1999. Claimant also underwent several months of physical therapy administered by physical therapists at Affiliated Physical Therapy, Inc. On July 2, 1999, claimant was seen by Dr. N. Lynn Rogers, a neurosurgeon.

PROCEDURAL HISTORY
On June 7, 1999, claimant filed a disputed claim for compensation in which she *445 sought reinstatement of benefits terminated on April 21, 1999, recognition of Dr. Zuppardo as her choice of physician, vocational rehabilitation, and reimbursement of the costs of certain prescriptions. Unisys answered claimant's pleading, denying that claimant had sustained a work-related accident for which benefits were due, or, in the event that a work-related accident was found, that benefits should have terminated months prior to April 21, 1999. Unisys further denied that claimant was due any additional compensation benefits.
On September 17, 1999, Unisys requested that the WCJ appoint an independent medical examiner to examine claimant, which request was granted by the WCJ on that same date, although no further evidence concerning the requested examination appears in the record. A hearing on this matter was held January 13, 2000, at which claimant and several employees of Unisys testified. None of the doctors who treated or examined claimant testified at the hearing, but progress notes, medical reports, and a deposition were introduced into evidence at the hearing. On February 4, 2000, the WCJ rendered judgment finding claimant had sustained a work-related injury and that she had reached maximum medical improvement (MMI) on July 2, 1999. He further found that Unisys was not required to pay for the medical services rendered by Dr. Rogers and acknowledged that he had not considered the medical reports of Dr. Rogers in rendering judgment. Claimant devolutively appeals the judgment and Unisys has answered the appeal.

ASSIGNMENTS OF ERROR
Claimant raises the following as alleged errors committed by the WCJ in rendering the judgment:
1. The Trial Court committed reversible error in its failure to find the Defendant liable for Supplemental Earnings Benefits from the date that compensation benefits were terminated.
2. The Trial Court committed reversible error in its refusal to consider the medical treatment, services or opinions rendered by Dr. N. Lynn Rogers in violation of [La. R.S. 23:1121(D) ], in addition to its refusal to allow the Claimant to change her physician of choice.
3. The Trial Court committed reversible error in its failure to find the Defendant arbitrary and capricious for their refusal to provide vocational rehabilitation services within the local geographic area of the Claimant's residence.
4. The Trial Court committed reversible error in its failure to find the Defendant liable for mileage reimbursement expenses and further for its failure to find the Defendant arbitrary and capricious for their refusal to pay those expenses.
In answering the appeal, Unisys avers that the WCJ erred in the following respects:
1. Judge Varnado manifestly erred in ruling that [claimant] had met her burden of proof [in establishing a] work-related accident.
2. Judge Varnado manifestly erred in ruling that [claimant] had reached MMI as of July 2, 1999 rather than on April 14, 1999.
Unisys also requests this court to consider whether it is entitled to costs and attorney's fees for the lodging of a frivolous appeal by claimant.

DISCUSSION

Work-Related Accident
In considering the issues before us, we will first address Unisys' contention that *446 the WCJ erred in finding that claimant had proven she had sustained a work-related injury by a preponderance of the evidence. Unisys argues that claimant's account of her alleged "accident" is implausible and therefore it was unreasonable for the WCJ to credit her testimony in finding that she had sustained a work-related injury. At the hearing on this matter, Unisys called as witnesses claimant's departmental manager, supervisor, and several co-workers, all of whom testified that they were neither informed nor aware that claimant had suffered an injury on the day of the alleged incident. Two of claimant's co-workers testified that they had noticed claimant limping on the day following the alleged accident and were told by her that she had injured her back. Additionally, Rachel Broussard, one of the two co-workers who had noticed claimant limping, testified that claimant told her that she had injured her back at home.
In order to recover workers' compensation benefits, an employee must show that he received a personal injury by accident arising out of and in the course and scope of his employment and that said injury necessitated medical treatment or rendered the employee disabled, or both. La. R.S. 23:1031; Haws v. Professional Sewer Rehabilitation, Inc., 98-2846, p. 5 (La.App. 1st Cir.2/18/00), 763 So.2d 683, 688. La. R.S. 23:1021(1) defines an "accident" for the purpose of recovering benefits under the workers' compensation law as
an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
The determination of whether an accident occurred is to be construed from the worker's perspective; however, a claimant's burden of proof is not relaxed, for he or she must still establish a work-related accident by a preponderance of the evidence. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 5 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 17.
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Jackson v. Savant Insurance Company, 96-1424, p. 3 (La.App. 1st Cir.5/9/97), 694 So.2d 1178, 1180. Corroboration may be provided by medical evidence or the testimony of fellow workers or friends. Moore v. Popeye's Fried Chicken, 96-1889, p. 8 (La.App. 1st Cir.6/20/97), 697 So.2d 5, 9. The fact that an employee does not notify his employer immediately that he suffered an accident or does so several days after the date of the alleged injury does not prohibit a finding that the employee sustained an accident. Parfait, 97-2104 at 5, 733 So.2d at 17.
The workers' compensation judge's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or manifestly erroneous. Harvey v. Bogalusa Concrete, Inc., 97-2945, p. 3 (La. App. 1st Cir.9/25/98), 719 So.2d 1130, 1132.
In the case before us, claimant alleges that she suffered an unexpected and unforeseen back injury from the actual, identifiable, and precipitous event of placing a file folder on the shelf above her work station. Furthermore, the record *447 discloses medical evidence of objective findings of the injury that substantiate that her injury was more than simply a gradual deterioration or progressive degeneration.
In his deposition, Dr. Hudspeth testified that on August 4, 1997, over a year prior to the alleged accident, claimant was examined by Ms. Soto for complaints of a constant, dull, lower back pain on awakening, primarily on her left side and radiating down the flank area. It was noted that claimant exhibited a slight tenderness in the left paraspinous musculature group, which worsened with sitting up. Ms. Soto ordered x-rays of the claimant's lumbar spine, which, according to the radiologist's report, revealed: moderate osteoarthritic changes with narrowing of the L5-S1 intervertebral disc space; small peripheral spurs at multiple levels; a small concavity along the interior inflates of the L1 and L2 vertebral bodies; and most likely a small Schmorl's node.
Dr. Hudspeth testified that he examined claimant on a follow-up visit, at which time claimant stated that her back pain was a little better and his resulting impression was "improved lower back pain." Dr. Hudspeth acknowledged that it was not unusual for patients of claimant's age to experience back pain and that more often overweight patients, such as claimant, would experience back pain.
Dr. Hudspeth then testified that on September 23, 1998, two days following the alleged accident, claimant was seen at Ochsner Clinic with complaints of "acute onset of low back pain with radiation to the right anterior thigh." Dr. Hudspeth stated that in an examination on that date, Ms. Soto noted that claimant exhibited tenderness along her lumbar spine at L3, L4, and L5 with paraspinous tenderness; negative straight leg raises; deep tendon reflexes of +1; and an overall impression of lumbar strain with spasm. Claimant was also found to be neurologically intact.
When asked his opinion as to whether the back injury noted by Ms. Soto on September 23, 1998, was related to the alleged work accident on September 21, 1998, Dr. Hudspeth stated, "[i]t seems to be when she started having more of her symptoms, but then she had a lot those symptoms prior to that too." Dr. Hudspeth then opined that the alleged accident did not cause claimant's chronic back pain, but that it did cause the acute onset of back pain. He further stated that it is possible that the lifting of a file weighing only a couple of ounces, over the head, could cause the acute onset of severe back pain as experienced by claimant and noted that, "I have a lot of folks who lift above their head and strain their back."
Considering the deposition testimony of Dr. Hudspeth, the medical reports of Ms. Soto, and the testimony of claimant's co-workers, we find no error in the conclusion that claimant proved by a preponderance of the evidence that she suffered a work-related accident. We, accordingly, reject this assignment of error.

Medical Reports of Dr. Rogers
In her second assignment of error, claimant avers that the WCJ erred in failing to consider the medical reports of Dr. Rogers.[3] In support of her argument, claimant cites La. R.S. 23:1121(D), which states in part:
After all examinations have been conducted but prior to any order directing the injured employee to return to work, *448 the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. (emphasis added).
The clear language of the statute mandates that the WCJ consider the medical report of a physician consulted pursuant to and in accordance with the provisions of the statute. Therefore, the only justification for the WCJ's failure to consider Dr. Rogers' reports is if the provisions of La. R.S. 23:1121(D) had not been followed. Unisys argues that the WCJ properly disregarded the reports, because claimant was released to return to work prior to her consultation with and examination by Dr. Rogers. We agree.
The record before us contains several releases authorizing claimant to return to work. On September 29, 1998, and October 6, 1998, Ms. Soto indicated on work status summaries completed by her that claimant could return to work. In conjunction with a job analysis performed by a vocational rehabilitation consultant, Ashley Bryars, all of the doctors and physical therapists questioned indicated that claimant could perform the job duties required for the position available with Unisys. Dr. Roig further indicated on the form completed by him that claimant was approved to return to work on a part-time basis on April 14, 1999. On June 1, 1999, Dr. Roig released claimant from his care and issued her a signed statement releasing her to return to work. Dr. Lea (Unisys' choice of physician) issued an order releasing claimant to return to work on December 4, 1998.
Finally, although recited in the judgment below, there is no evidence in the record before us of a release by Dr. Cullom dated July 2, 1999. However, in Dr. Cullom's June 24, 1999 progress note, he stated that he saw no reason why claimant could not make the drive to her job in Baton Rouge. Claimant was not seen by Dr. Rogers until July 2, 1999. Therefore, considering this evidence, the WCJ was justified in not considering the medical reports of Dr. Rogers in making his determination. Accordingly, we find no error and reject claimant's argument on this issue.

Choice of Treating Neurosurgeon
Also in her second assignment of error, claimant contends that the WCJ erred in refusing to allow her to change her choice of neurosurgeon from Dr. Cullom to Dr. Rogers. By this contention, claimant seeks to have Unisys pay for the medical services and treatment rendered by Dr. Rogers. Although this claim was not raised in claimant's disputed claim for compensation, in her pre-trial statement, claimant did indicate that one of the issues to be litigated was whether Unisys should be ordered to pay for the reasonable and necessary medical expenses of her treatment by Dr. Rogers. Implicit in the WCJ's refusal to allow claimant to change her choice of physician from Dr. Cullom to Dr. Rogers, and in his refusal to order Unisys to pay for Dr. Rogers' services, is the finding that Dr. Rogers' treatment was not medically necessary.
Claimant avers that she is entitled to change her choice of physician because her initial choice, Dr. Cullom, released her to return to work while she still experienced pain. Claimant cites the cases of Pekinto v. Olsten Corporation, 587 So.2d 68 (La.App. 4th Cir.1991), and Martin v. Criminal Sheriff of Orleans Parish, 629 So.2d 1234 (La.App. 4th Cir. 1993), writ denied, 94-0623 (La.5/6/94), 637 So.2d 1047, in support of her argument. We reject claimant's argument; claimant *449 is not entitled to change her choice of physician merely because her initial choice released her to return to work. See Wiley v. Kenneth Parker Logging, 97-1247, pp. 9-10 (La.App. 3rd Cir.3/6/98), 711 So.2d 297, 301. To prove that she was entitled to change her choice of physician, claimant was required to prove the medical necessity of Dr. Rogers' treatment. La. R.S. 23:1203; Lemoine v. Hessmer Nursing Home, 94-836, p. 18 (La.App. 3rd Cir.3/1/95), 651 So.2d 444, 454; Stelly v. United Parcel Service, 600 So.2d 156, 159-160 (La.App. 3rd Cir.1992); see also Pekinto, 587 So.2d at 74. Furthermore, a workers' compensation judge's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Fenyes v. Highland Park Medical Center, 97-0120, p. 5 (La.App. 1st Cir.2/20/98), 708 So.2d 493, 496.
Based on our consideration of the record, we conclude that there is a reasonable factual basis for the WCJ's determination that Dr. Rogers' services were not medically necessary. By her own testimony, claimant acknowledged that the medical findings and treatments rendered by Dr. Rogers were not substantially different from those of prior physicians. At the hearing, she testified that every doctor that examined her found she had left-sided weakness and could not lift things. She further acknowledged that Dr. Rogers had prescribed the same medication as Dr. Cullom and that Dr. Rogers had given her the same sacroiliac joint injections as had previously been administered to her by Dr. Roig. However, Dr. Rogers alone found that she could not drive more than 20 to 30 minutes. Claimant suggests that an objective medical basis for Dr. Rogers differing opinion is a statement in a medical note by Dr. Cullom in which he opined that the appearance of the "L4/5 may be slightly more prominent" on the April 1999 MRI than on the October 1998 study. However, Dr. Cullom's note further explained that the difference in appearance may be the result of the unequal quality of the two studies.
Considering this evidence, we cannot conclude that the WCJ manifestly erred in refusing to allow claimant to change her choice of physician. We, therefore, reject claimant's assignment of error in this regard.

SEBs, Vocational Rehabilitation and MMI
Claimant additionally seeks an award of supplemental earnings benefits (SEBs) and requests that Unisys be ordered to provide vocational rehabilitation in her local geographic area. Conversely, Unisys asserts that claimant reached MMI on April 14, 1999, rather than July 2, 1999, and requests that this court find that claimant is not owed any benefits beyond the earlier date.
There is no dispute as to claimant's ability to return to work as a nurse analyst. Although Dr. Rogers opined that claimant is "not fit for work duty," claimant unequivocally testified that she is able to perform the light-duty, sedentary work of her former position, which fact is confirmed by the other physicians and physical therapists who examined and treated her. Nonetheless, a dispute does exist as to claimant's ability to drive to Baton Rouge and back home.
According to La. R.S. 23:1121(D), if a disagreement exists after the claimant has been examined by a physician chosen by the employer under subsection (A), by a physician chosen by the claimant under subsection (B), and by a physician chosen by and paid for by the claimant under subsection (D), then the provisions of La. R.S. 23:1123 should be followed. See *450 Brooks v. Leggett & Platt, Inc., 94-0617, pp. 8-9 (La.App. 1st Cir.11/9/95), 665 So.2d 432, 437. That statute provides:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
In this instance, Unisys requested that a medical practitioner be appointed to conduct an independent medical examination of claimant. Yet the record fails to disclose any further information concerning whether the requested examination took place, and if so, whether the results of the examination were considered by the WCJ. However, neither party questions this omission, therefore, we will proceed in our determination of whether claimant is entitled to SEBs and additional vocational rehabilitation based on the evidence in the record before us.
In Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947, the court was faced with an identical issue regarding the awarding of SEBs and vocational rehabilitation. In that case, the claimant, who lived in Baker, Louisiana, was offered a light-duty job at the same Baton Rouge facility in which he had previously worked, located 30 miles from his home. For three months, the claimant attempted to work in the light-duty position, but eventually quit when spasms in his left leg, caused by the lengthy drive, rendered him unable to fully control his vehicle and made driving dangerous. Daugherty, 95-1394 at 2, 674 So.2d at 949. The claimant presented the medical testimony of his treating physician and the physician chosen by his employer to support his claim. Daugherty, 95-1394 at 2-3, 674 So.2d at 949.
The supreme court upheld the finding that the claimant had proven a prima facie case of entitlement to SEBs, but reversed the lower courts' rulings holding that the employer was entitled to reduce the amount of SEBs paid to the claimant based on the light-duty job offered in Baton Rouge. Daugherty, 95-1394 at 2, 674 So.2d at 949. The court noted that La. R.S. 23:1221(3)(c)(i) states that in the case of an unemployed worker, SEBs should be calculated based on the amount the employee would have earned by any employment which (1) he was physically able to perform, (2) which he was offered or tendered by the employer or any other employer, or (3) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. Daugherty, 95-1394 at 8, 674 So.2d at 952. The court further held that "courts must consider all factors that affect the claimant's ability to engage in the offered or available employment, including whether the claimant is able to physically transport himself to that job. Claimant's ability to get to the job site, or lack thereof, is necessarily a part of the determination of whether the employee can physically perform the work." Daugherty, 95-1394 at 9, 674 So.2d at 953. The court also noted that "a claimant does not have to accept employment that involves an appreciable and significant risk to his well being." Daugherty, 95-1394 at 9, 674 So.2d at 953.
In that case, the court found that the claimant had presented sufficient medical and lay testimony to show that due to his injury-related condition, he was unable to travel more than five to ten miles from home to perform his job. By failing to present evidence of other employment *451 available within a "reasonable geographic region," the employer was not entitled to reduce the amount of SEBs paid to the claimant. Daugherty, 95-1394 at 12, 674 So.2d at 955.
In the case before us, unlike Daugherty, a disagreement exists in the medical evidence as to claimant's fitness or ability to drive to and from the available employment, which in turn, necessarily begs the question of her ability to perform the work offered. See Daugherty, 95-1394 at 9, 674 So.2d at 953; see also Joyner v. Davison Transport, Inc., 28,880 (La.App. 2nd Cir.1/22/97), 688 So.2d 623.
Dr. Cullom stated unequivocally in his June 24, 1999 report that he saw no reason why claimant could not sit in a car for the length of time it took to reach Baton Rouge. Dr. Roig, on the other hand, stated in his June 1, 1999 medical report that claimant had told him that riding in a car for an extended period of time exacerbated her pain. He, in turn, stated that he understood her difficulty driving or riding in a car for extended periods of time and in the release signed by him, he stated "[a]lthough Ms. Parker is released to return to light duty at her job in Baton Rouge, driving remains a hindrance to her because long periods of driving exacerbate her pain." Therefore, it is not clear whether Dr. Roig himself made the determination that claimant's pain was exacerbated by extensive driving or whether he was simply echoing claimant's subjective complaints. Furthermore, in the medical notes of Drs. Lea and Cullom, as well as in the report of the functional capacity exam performed by Mr. Heap, each state that claimant exhibited several Waddell signs, which indicate the possibility of malingering.
In order to receive an award of SEBs, a claimant bears the initial burden of proving by a preponderance of the evidence that her work-related injury rendered her unable to earn 90 percent of her pre-injury wages. La. R.S. 23:1221(3)(a). Once a claimant establishes a prima facie case, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. La. R.S. 23:1221(3)(c)(i). On such a showing, the burden then shifts back to the claimant to prove by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the employment offered or available solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii). See Moore v. Sanderson Farms, Inc., 95-2042, p. 8 (La.App. 1st Cir.5/10/96), 674 So.2d 478, 483, writ denied, 96-1399 (La.9/13/96), 679 So.2d 106. We further recognize the general jurisprudential rule that a treating physician's opinion, in this case, Dr. Cullom, is given more weight than a non-treating physician. Collins v. Family Dollar Stores, Inc., 99-0622, p. 8 (La.App. 1st Cir.5/12/00), 760 So.2d 1210, 1215, writs denied, 00-2356, 00-2363 (La.11/13/00), 773 So.2d 727.
Based on the evidence presented, the record supports the WCJ's determination that claimant failed to meet her burden of showing by clear and convincing evidence that she is unable to perform the employment offered, i.e. to physically transport herself to the available employment because of substantial pain. Accordingly, we hold that the WCJ's determination was not manifestly erroneous and we reject claimant's request for SEBs and additional vocational rehabilitation.
We now address whether claimant reached MMI on April 14, 1999, rather than July 2, 1999, and again note the absence of the purported July 2, 1999 release by Dr. Cullom in the record. However, it is clear that Dr. Cullom still treated claimant as late as June 24, 1999. *452 Therefore, we will amend the judgment of the WCJ to reflect June 24, 1999, as the date claimant reached MMI.

Travel reimbursement
The claimant further asserts that she is entitled to an award of $700.00 as reimbursement for travel expenses incurred in the course of her medical treatment. According to La. R.S. 23:1203(D), an "employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, ...." However, a claimant must present evidence of such expenses, such as "the actual cost of a trip to the hospital or doctor's office or the number of miles traveled for such a trip." Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir.11/9/95), 665 So.2d 422, 429. Unisys argues that it was not presented with evidence of the claimed travel expenses, nor does any such evidence appear in the record before us. In the absence of such proof, claimant has failed to prove that she is entitled to reimbursement of her travel expenses and therefore, the WCJ did not err in declining her request. See also Spence v. Industrial N.D.T., 31,744, pp. 7-8 (La.App. 2nd Cir.3/31/99), 731 So.2d 473, 478.

Frivolous Appeal
Unisys has requested an award of penalties and attorney's fees for the lodging of a frivolous appeal. To assess damages for a frivolous appeal, it must appear that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of the law he advocates. Daisey v. Time Warner, 98-2199, p. 8 (La.App. 1st Cir.11/5/99), 761 So.2d 564, 569. Although unsuccessful, we do not find claimant acted in bad faith or for the purpose of delay or harassment in bringing this appeal. As such, we decline to award Unisys damages for a frivolous appeal.

CONCLUSION
Considering the foregoing discussion, we amend the judgment of the WCJ to reflect June 24, 1999, as the date claimant reached MMI. In all other respects, the judgment is affirmed. The request by Unisys for an award of damages for frivolous appeal is denied. All costs of this appeal are cast to claimant, Patsy Lang-Parker.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] According to Dr. Hudspeth's deposition testimony, physician assistants are medical personnel who examine patients just like physicians: "They take histories, do physicals, render diagnoses and opinions on treatment plans, and the only difference is they don't write prescriptions. A physician has to write the prescription and agree with the plan."
[2] There are references throughout the record regarding the fact that claimant was treated by Dr. Zuppardo and Dr. Richard Donovan, a psychiatrist; however, no medical records from these practitioners appear in the record.
[3] In the judgment rendered, the WCJ expressly found "that the medical services, treatment and opinions rendered by Dr. N. Lynn Rogers is [sic] excluded from coverage by the employer as well as consideration by this court...."