CARTER, C.J.
| ¡.Claimant, Prince Primus, filed a disputed claim for compensation with the Office of Workers’ Compensation Administration, asserting that he was working at a job site for Brand Services, Inc. (Brand) on September 28, 2009, when he fell from a scaffold, causing injury.
After a trial on the merits on July 12, 2010, the workers’ compensation judge (WCJ) left the record open in order to allow the parties to submit an independent medical examination report for claimant’s independent medical examination, which was scheduled by the OWC Medical Services Office for August 9, 2010. Upon notification that claimant failed to appear for the examination, the judge closed the record and rendered judgment dismissing claimant’s claims against Brand for indemnity benefits and additional medical benefits with prejudice.
In making this ruling, the WCJ gave extensive reasons, noting that claimant was “less than truthful about his prior documented neck and back injuries” and “has been less than cooperative with appearing for scheduled medical appointments, which indicates to the court that further medical treatment is in all likelihood unnecessary.” The WCJ further noted that “[njone of the doctors who have examined Mr. Primus have declared him disabled.” Claimant appeals the judgment.
After a thorough review of the record, including the WCJ’s extensive written reasons attached hereto as Appendix A, we find no manifest error in the factual determinations of the WCJ or legal error in the judgment of ^dismissal.[1],[2] We affirm the judgment in accordance with Uniform Rules-Courts of Appeal, Rule 2-16.1(B). Costs are assessed against claimant, Prince Primus.
AFFIRMED.
APPENDIX A
PRINCE PRIMUS VS. BRAND SERVICES, INC.
DOCKET # 09-08926 DISTRICT 6
OFFICE OF WORKERS’ COMPENSATION
STATE OF LOUISIANA
WRITTEN REASONS
|,Prince Primus filed a disputed claim for compensation on October 23, 2009. He *62 alleged injuries to his leg and back as a result of a September 28, 2009 accident while in the course and scope of his employment at Brand Services, Inc. (“Brand”). Over the course of the litigation, Mr. Primus filed several amended claims naming various Brand entities as his employer. However, at trial on the merits, exceptions of no cause of action were granted as to Brand Energy & Infrastructure and Brand Scaffold Builders, and the correct employer was stipulated to be Brand Services, Inc.
Trial was held on July 12, 2010. After taking testimony and evidence, the court left the record open specifically for the purpose of allowing the parties to submit the independent medical examination (IME) report of Dr. Thad Broussard. The IME was scheduled by the OWC Medical Services office for August 9, 2010 at 1:30 p.m.
On the afternoon of August 9, 2010, the court was notified by fax from the OWC Medical Services office that Mr. Primus failed to appear for the examination.
| pMr. Primus testified at trial. He testified that he is 27 years old and has been scaffolding since he was 18 years old. Mr. Primus testified that he has never had a previous workers’ compensation claim, and that he had been employed at Brand about three and a half months.
Mr. Primus testified that he had never had prior ankle, neck, or back injuries, and that he had never had any prior motor vehicle accidents.
Mr. Primus testified that the work accident occurred around 8:00 p.m. He testified that at the time of the accident, his ankle was in severe pain, and he also complained of back pain. He testified that the next day his mother took him to North Oaks Hospital for his upper back. He testified that he has not returned to work since the accident, and that he has not received wage payments.
Mr. Primus testified that he saw a doctor on Airline Highway on September 30, 2009.
On cross-examination, Mr. Primus testified that he fell 7 feet onto a pipe underneath him. He testified that Brand had no job available after the accident, but he was told he could come in and just sit around.
Mr. Primus was presented with medical records from North Oaks Hospital. Mr. Primus testified that he could not recall suffering a neck injury in September 2001. He testified that he did not have a motorcycle accident in January 2007 because he does not know how to ride a motorcycle. He testified that it must have been his brother posing as him on those visits.
IsDaJuan Carter, Jr. testified on Mr. Primus’ behalf. He testified that he saw Mr. Primus fall down onto a pipe maybe about 4 feet, but he was stopped by his harness.
Malcolm Pines also testified on Mr. Pri-mus’ behalf. He testified that he vaguely remembers the incident, and that he gave a statement to the safety personnel.
Brand’s “Supervisor’s Initial Investigation Report” (SIM) was admitted into evidence. The report indicates Mr. Primus sustained an injury to his left ankle. The report indicates that Mr. Primus’ foot was twisted between two scaffold planks, and he suffered a strained left ankle.
Medical records from River Parishes Hospital were admitted into evidence. The records indicate Mr. Primus was seen there on September 28, 2009, the day of the accident. He complained of left ankle pain after falling 7 feet and his left leg got caught between two boards. X-rays taken of the left lower leg, foot, and ankle were *63 all interpreted as normal. He was discharged with crutches.
Medical records from North Oaks Hospital were admitted into evidence. The records indicate that Mr. Primus was seen there on September 29, 2009, the day after the accident. The nurse’s notes indicate that Mr. Primus was “popping wheelies in wheelchair in waiting room.” The notes indicate that Mr. Primus complained of falling off a scaffold the night before and twisting his ankle, but that now his back was hurting. He was discharged with medications and told to see his family physician.
|4The SIIR contains a medical report which indicates that Mr. Primus was seen at Gulf Coast Occupational Medicine, Inc. on Airline Highway on September 30, 2009, two days after the accident. He was diagnosed with low back pain, ankle sprain, and mid back pain and released to regular duty as tolerated. He was scheduled to return to the clinic on October 7, 2009, but there are no subsequent medical records from Gulf Coast Occupational Medicine, Inc.
Medical records from Dr. F. Allen Johnston were admitted into evidence. Mr. Primus elected to see Dr. Johnston as his choice of orthopaedist. Mr. Primus first saw Dr. Johnston on February 22, 2010. At that visit, Mr. Primus related that he was injured when his left ankle got stuck between two boards and he lost his balance and fell backwards. He related that his harness did not catch him. He related that after 24 hours, he developed pain in his neck and back. He denied any previous issues with his neck, back, or left ankle.
Dr. Johnston’s physical examination of the neck revealed a normal posture, no radiculopathy, and discomfort in the inter-scapular area but no trigger points. In examining the low back, Mr. Primus had a negative straight leg raise. His examination of the left ankle revealed a negative drawer exam, tenderness over the anterior talofibular ligament, and full range of motion. Dr. Johnston diagnosed Mr. Primus with a left ankle strain, rule out internal derangement, and cervical and lumbar strains. He recommended MRI of the left ankle, and physical therapy for the neck and back. He did not disable Mr. Primus from work.
1 ¿Medical records from Dr. Joe Morgan were admitted into evidence. Dr. Morgan’s billing records, as well as correspondence from Brand’s workers’ compensation administrator, indicate that Mr. Primus was originally scheduled to see Dr. Morgan on February 17, 2010. Mr. Primus did not see Dr. Morgan on February 17, 2010, and Brand’s workers’ compensation administrator was charged a $250.00 “no-show” fee. Mr. Primus eventually appeared for the rescheduled appointment on March 8, 2010.
Dr. Morgan’s March 8, 2010 report indicates Mr. Primus related an accident in which he fell from a scaffold. He related that he fell five feet or more, but did not fall to the ground. He related that he was held by a strap on the harness he was wearing, that he fell onto a pipe that was beneath the scaffold, and that his left foot was jammed under a board.
Mr. Primus denied any motor vehicle accidents, and other bone, joint or spine accidents or problems except fractures to both arms long ago. He also related prior chiropractic treatment a long time prior, but could not remember details.
Based on his examination and x-rays of the neck, back, and ankle which he performed at his office, Dr. Morgan stated that he could not find any orthopaedic or neurologic abnormality in Mr. Primus. He *64 stated that Mr. Primus may have sustained a closed injury to his left ankle from which he had made a complete recovery. Dr. Morgan felt that Mr. Primus was not in need of further diagnostic work-up or treatment for injuries he may have sustained in the accident. Dr. |BMorgan did not place any work restrictions on Mr. Primus and considered him to be at maximum medical improvement.
Medical records from North Oaks Hospital indicate that Mr. Primus presented to the emergency room on January 25, 2007 complaining of back and rib pain from a motorcycle accident, but he left without being treated. The records also indicate that Mr. Primus presented to the emergency room on December 18, 2006 complaining of neck, low back, and left thumb pain from a motor vehicle accident in which he was an unrestrained driver. The records further indicate that Mr. Primus presented to the emergency room on September 24, 2001 complaining of neck pain after being hit by a truck in a motor vehicle accident.
Looking at the evidence as a whole, the court concludes that Mr. Primus has failed to meet his burden of proof by clear and convincing evidence that he suffered any disability from his accident on September 28, 2009 at Brand. None of the doctors who have examined Mr. Primus have declared him disabled. Additionally, Mr. Primus was less than truthful about his prior documented neck and back injuries, and his testimony that it was his brother who sought medical treatment posing as Mr. Primus is self-serving and not credible. Finally, Mr. Primus has been less than cooperative with appearing for scheduled medical appointments, which indicates to the court that further medical treatment is in all likelihood unnecessary.
|7For all these reasons, the court orders that Mr. Primus’ claims for indemnity benefits and additional medical benefits shall be dismissed with prejudice. Further, Mr. Primus is assessed costs in the amount of $1,200.00 for his failure to appear at the state-appointed IME on August 9, 2010.
RENDERED AND SIGNED this 10th day of August 2010 in Covington, Louisiana.
/s/ [illegible]
Elizabeth A. Warren
Southeastern Division Judge
Office of Workers’ Compensation

. Claimant contends the WCJ erred in failing to impose sanctions in the form of penalties and attorney's fees against Brand for its failure to pay benefits. Because we find no error in the WCJ’s dismissal of claims for indemnity benefits, we pretermit discussion of this assignment of error.

. Claimant also contends the WCJ erred in failing to impose sanctions in the form of penalties and attorney's fees against Brand for its failure to authorize necessary diagnostic treatment. An employer has a statutory duty to furnish all necessary medical treatment caused by work-related injury. La.Rev. Stat. Ann. § 23:1203. The WCJ made an apparent finding that such treatment was unnecessary. A WCJ's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Lang-Parker v. Unisys Corporation, 00-0880 (La.App. 1 Cir. 10/5/01); 809 So.2d 441, 449. We do not find the determination of the WCJ to be manifestly erroneous given the circumstances.