587 So.2d 68 (1991)
Kathleen PEKINTO
v.
The OLSTEN CORPORATION and Hartford Fire Insurance Company.
No. 91-CA-0470.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1991.
*69 James C. Cockfield, Frederick A. Miller & Associates, Metairie, for appellants.
C. David Schumacher, Carl J. Schumacher, Jr., Schumacher Law Corp., Ltd., New Orleans, for appellee.
Before SCHOTT, C.J., and BARRY and CIACCIO, JJ.
CIACCIO, Judge.
Defendants in this worker's compensation suit, The Olsten Corporation and its worker's compensation insurer, Hartford Fire Insurance Company, appeal a judgment rendered by the Louisiana Office of Workers' Compensation finding plaintiff, Kathleen Pekinto totally, temporarily disabled and awarding her additional worker's compensation benefits, medical expenses, statutory penalties, attorney fees, expert witness fees and litigation costs after the hearing officer concluded defendant acted arbitrarily and capriciously in terminating plaintiff's worker's compensation benefits. We affirm.
The hearing officer in rendering judgment made the following findings of fact and conclusions of law:

Facts
Claimant, Kathleen Pekinto, was employed by Olsten Temporary Services, a division of The Olsten Corporation, as a secretary in 1986, and was assigned secretarial duties at Allstate Insurance, 770 *70 Gause Blvd., Slidell, Louisiana. While in the course and scope of her employment, on May 30, 1989 the heel of plaintiff's right shoe got caught in a crack in the plastic floor mat at the AllState office, and plaintiff fell injuring her knee and ankle.
Plaintiff was seen by James Butler, M.D. on the day of her injury, and thereafter was treated conservatively without satisfactory results and plaintiff thus underwent right knee orthoscopy on August 8, 1989 which demonstrated an osteochondral defect of the medial femoral condyle of the right knee.
Despite continued medical attention plaintiff was unable to stand or work for any period of time. On December 11, 1989 defendant, The Hartford Insurance Group, the Workers Compensation insurer of the Olsten Corporation, through its claims processor, Phyllis Schaefer, wrote to Dr. Butler stating that the plaintiff's" job duties do not require standing or walking as she is a secretary for an insurance company. Could she go back to work as a secretary? If she is sitting behind a desk, I see no reason why she cannot return to work at this time." [P-3]
Dr. Butler responded by letter of December 15, 1989 to Ms. Schaefer indicating that he saw no contraindications for plaintiff returning to work inasmuch as her job duties do not require standing or walking. [P-4]
On December 20, 1989 defendant, Hartford Fire Insurance Company, filed a "Notice that compensation payments have stopped." [P-2]
By letter dated January 8, 1990 plaintiff informed defendant, The Hartford Insurance Group, that Ms. Pekinto's job was misrepresented to her doctor as one that did not require standing or walking [P-5] and enclosed a letter of January 4, 1990 from the AllState insurance agents for whom Ms. Pekinto worked, which detailed her job description and stated that her job entails quite a bit of walking and bending. [P-5(1)]
The evidence adduced at trial clearly and convincingly demonstrates that Kathleen Pekinto's condition has not improved, and she remains temporarily totally disabled, physically unable to engage in any employment. It further demonstrates that she is in need of additional surgery and continued medical treatment.
Defendants' consistent pattern of bad faith was first conspicuous when Ms. Schaefer arbitrarily and capriciously misrepresented Ms. Pekinto's job duties. The statement that her employment required neither standing nor walking was made pursuant to a conference with her boss, the Hartford's claim Supervisor, Frank Nania. Significantly, however, Ms. Pekinto's bosses, the witnesses Ray Cavignac and Ken Gibbs, were not interviewed. Incredibly, defendants maintain that "the duties of the employee were never misrepresented to anyone." Defendants To The Pre-Hearing Questionnaire, (V).
The misrepresentation had its intended effect when Dr. Butler responded with a letter that was then used to issue a Notice That Compensation Payments Have Stopped the week before Christmas, 1989.
The wrongfulness of this action was brought to defendants' attention by claimant's counsel's letter of January 8, 1990, which included a description of her real duties by the Allstate agents. Even though Dr. Butler recommended that plaintiff not return to work until March 5, defendants did not reinstate compensation benefits at that time.
Instead, defendants placed Ms. Pekinto under surveillance. The D & D Investigative Services report of March 6, 1990 confirmed that "the claimant walked with a distinct limp, and used a cane to aid her movement." [P-8] Defendants knew Kathleen Pekinto was a wife and mother who was disabled and thus dependent on these benefits for her family's support. Defendants' investigation showed that Kathleen Pekinto was not a malingerer. Nonetheless, they did not restore her benefits.
Defendants could not reasonably rely on Dr. Butler's opinion since they had misrepresented *71 her job duties and since they had independent reliable evidence that Mrs. Pekinto remained disabled. See photographs, P.8.
On April 27, 1990 Ms. Pekinto advised defendants that, following examinations, Dr. Robert Ruel, Jr. determined that further surgery is warranted and she formally requested authorization for Dr. Ruel's treatment. [P-7]
On May 9, 1990 Hartford arbitrarily and capriciously refused consent to a change of physician or payment for treatment. [P-9] Further proof of defendants' arbitrariness is the May 21, 1990 check they issued for $1,807.74 for BACK COMP 10% 12/18/89-03/04/90". [P-6]
Law
Claimant was entitled to sixty-six and two-thirds percent (66.66%) of wages during the disability period and payment of all medical expenses. Defendants' arbitrary and capricious actions make them liable for penalties, attorney's fees and interest, in addition to resumption of the benefits which should not have been discontinued.
Under La.R.S. 23:1201.2 payment of all reasonable attorney fees is due by defendants because of their arbitrary discontinuance of payment of this claim.
Further, the arbitrary withholding of consent to Ms. Pekinto's request to change physicians makes defendants liable for attorney's fees and; medical expenses under La.R.S. 23:1123(C).
Taking into account the degree of skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the amount of time devoted to the case, a reasonable amount of attorney fees for claimant's counsel is ten thousand dollars ($10,000.00).
Under La.R.S. 23:1201(E), penalties of 12% should be added to all compensation which was arbitrarily unpaid (or was belatedly paid) from December 18, 1989 until the date of payment, with credit for payments made.
After reviewing the testimony and the evidence in the record, we find that the hearing officer's factual findings are supported by the evidence. Adhering to the established principle that an appellate court must give great weight to conclusions reached by the trier of fact and that they should not be disturbed unless manifestly erroneous, we adopt the hearing officer's finds of fact as set forth above. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
On appeal defendants raise several assignments of error. First, they contend the hearing officer erred in awarding plaintiff worker's compensation as they argue that the evidence does not support a finding that plaintiff is temporarily, totally disabled.
Under the provisions of R.S. 23:1221, an employee must prove that she was unable to engage in any self-employment or gainful occupation for wages before she may be found temporarily, totally disabled for purposes of worker's compensation. Defendants assert that plaintiff's treating physician, Dr. James Butler, had concluded that plaintiff was able to return to work as a secretary and, therefore, plaintiff had not met the burden set forth in R.S. 23:1221. We disagree.
At the hearing, Dr. Butler testified that he first saw plaintiff on May 30, 1989, immediately following her accident. Plaintiff complained of pain in both her right knee and ankle, resulting from her injury. At that time, Dr. Butler examined her and found tenderness over the lateral aspect of the ankle ligaments and ankle joint capsule and also tenderness in the posterior and lateral aspect of the right knee, with a slight limitation of motion to both the knee and ankle. Dr. Butler testified that at the initial examination he opined that plaintiff had sustained a sprain to the right knee and ankle. He then prescribed an anti-inflammatory medication, a canvas ankle brace and an ace bandage for the right knee. Plaintiff's second visit to Dr. Butler was a week later. According to Dr. Butler, her condition had worsened and he had recommended that she undergo extensive physical therapy to the right knee and ankle and that she wear a brace on the *72 right knee. Plaintiff saw Dr. Butler again on June 20th and 27th. At the June 27th visit, Dr. Butler noticed that plaintiff's knee still showed no improvement and because of persistent complaints, recommended to Hartford by letter that she undergo arthroscopic surgery. Dr. Butler performed an arthroscopic evaluation of plaintiff's knee and discovered that plaintiff had a defect in the femoral condyle of the right knee. He then proceeded to shave the area where there was a defect in the articular cartilage. Following the surgery Dr. Butler continued to see plaintiff on a regular basis. In September of 1989, plaintiff continued to complain of pain in the knee, particularly while standing for prolonged periods of time. There was also swelling in the ankle. Dr. Butler advised plaintiff to continue with the physical therapy. Plaintiff received the physical therapy treatments several times each week and saw Dr. Butler regularly in September, October, November and December of 1989 but there was no marked improvement in the knee.
According to Dr. Butler, on December 15, 1989 he sent a letter to Hartford stating that plaintiff could return to work based on the job description given to him by Phyllis Schaefer, claims processor for Hartford, that plaintiff's job duties did not require standing or walking. However, after examining her on December 28th and learning that plaintiff's job required more than sitting at a desk, Dr. Butler sent Hartford a letter stating that, although he saw no contraindications for her returning to work as a secretary, he opined she could only stand and walk intermittently for a period of two or three hours in an eight hour day. He also stated that there remained a limitation of flexion and extension of the knee. Plaintiff continued seeing Dr. Butler through January of 1990 and during her examination on February 20, 1990, he recommended that she continue physical therapy for two more weeks and then discontinue it. He testified that he believed plaintiff had reached her maximum improvement from the arthroscopic surgery and that he advised her to return to work on March 5, 1990. Plaintiff last visited Dr. Butler on April 17, 1990. At that time, Dr. Butler testified he believed any further arthroscopic surgery would be of no use.
Prior to her last visit to Dr. Butler, plaintiff sought a second opinion from Dr. Robert Ruel, an orthopedic surgeon. Dr. Ruel testified that he examined plaintiff on March 30, 1990 and diagnosed her as having a locked right knee with limited extension and flexion. According to Dr. Ruel, given plaintiff's history of the injury, he believed that further orthoscopic surgery and physical therapy would improve the condition of plaintiff's knee and recommended that plaintiff undergo it.
Based on the testimony in the record, we find no manifest error in the hearing officer's finding that plaintiff was temporarily, totally disabled. Although Dr. Butler concluded plaintiff could return to work on March 5, 1990, plaintiff still experienced constant pain, the knee's extension and flexion were restricted, plaintiff walked with a limp and was aided with the use of a cane. Further, the defendants presented no evidence to indicate that the plaintiff could perform her job duties as set forth by her employer within the restrictions imposed by Dr. Butler. Thus, the hearing officer could reasonably have concluded that plaintiff's disability was continuing at the time of trial.
As their second assignment of error, defendants contend that the hearing officer erred in awarding statutory penalties and attorney fees and in finding that defendants acted arbitrarily and capriciously in terminating plaintiff's worker's compensation benefits. They contend that they terminated plaintiff's benefits based on Dr. Butler's opinion that plaintiff exhibited no contraindications precluding her from returning to work.
Under the provisions of R.S. 23:1201.2, the plaintiff is entitled to penalties and attorney's fees for the defendants' failure to pay worker's compensation benefits the entire period plaintiff was disabled or if the discontinuation was "arbitrary, capricious, or without probable cause." In Miller v. Guaranty Industrial, 557 So.2d 326 (La. *73 App. 4th Cir.1990), this court held that an insurer can be liable for penalties and attorney's fees even if it properly discontinues benefits on the basis of a doctor's report, if it fails to reinstate benefits after receiving a subsequent report indicating continuing disability.
The evidence in the record shows that Dr. Butler's initial recommendation on December 15, 1989 that plaintiff could return to work was based on the letter sent to him by Phyllis Schaefer, stating that plaintiff's job did not require standing or walking. Based on this initial recommendation by Dr. Butler, Hartford sent notice to plaintiff and the Louisiana Office of Worker's Compensation that her worker's compensation payments had been terminated effective December 18, 1989. On January 8, 1990 plaintiff's counsel sent a letter to Hartford requesting that it reinstate plaintiff's compensation payments and stating that Schaefer had misrepresented plaintiff's job description. Hartford did not reinstate the benefits. Instead, Hartford relied on Dr. Butler's opinion expressed in a letter dated January 10, 1990 that plaintiff could work in an office, alternating "standing and walking for a total of 3-4 hours per 8-hour day", and refused to reinstate plaintiff's compensation payments.
Although defendants relied on Dr. Butler's recommendation, we find the hearing officer was clearly correct in finding defendants acted arbitrarily and capriciously in terminating plaintiff's compensation and in failing to reinstate them when plaintiff's counsel requested that they do so.
The evidence in the record demonstrates that Hartford either negligently or intentionally misrepresented plaintiff's job duties to Dr. Butler; that Hartford received a report from D & D Investigative Services, Inc., the firm hired by it to conduct a surveillance of plaintiff's routine activities, which stated that "claimant walked with a distinct limp, and used a cane to aid her movement"; and, that Hartford received a report from Dr. Ruel dated April 20, 1990 indicating that further arthroscopic surgery on plaintiff's knee was warranted.
Upon receipt of that opinion from Dr. Ruel, Hartford had a duty to further investigate the extent of plaintiff's disability, if any. However, Hartford did nothing. They did not request a more detailed report from Dr. Ruel nor did they seek another evaluation from Dr. Butler or from another orthopedist. Hartford ignored Dr. Ruel's report even though it was in conflict with the earlier report from Dr. Butler, and despite the report of D & D which supported the existence of plaintiff's disability.
Accordingly, we find that, under the circumstances, defendants' argument that they neither acted arbitrarily nor capriciously as evidenced by the check they issued to plaintiff for $1,807.74 in back compensation to be without merit in light of the overwhelming evidence which shows otherwise.
Defendants further argue on appeal that the hearing officer erred in ordering a change in physicians from Dr. Butler to Dr. Ruel and in ordering them to pay the medical expenses incurred by plaintiff relative to her treatment by Dr. Ruel. They contend that plaintiff failed to obtain prior consent from her employer or its worker's compensation carrier for a change of treating physician as required by statute.
R.S. 23:1121 expressly provides:
1121. Examination of injured employee
A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his worker's compensation carrier shall not require the employee to be examined by more than one duly qualified practitioner in any one field or specialty unless prior consent has been obtained from the employee.
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the *74 employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
C. If the employer or insurer has not consented to the employee's request to change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney's fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such physician's services.

* * * * * *
Dr. Butler initially treated plaintiff from May 1989 through April 1990. Only after Dr. Butler recommended that plaintiff return to work in March 1990, discontinued her physical therapy and stated that he did not believe further orthoscopic surgery would improve her condition did plaintiff consult with Dr. Ruel. At the time plaintiff remained in constant pain, walked with a limp and her knee's flexion and motion were still restricted.
Under the provisions of R.S. 23:1121(B) and (C), an employee is not precluded from changing physicians, but the employee must obtain the employer's consent to do so. If the employee presents a good reason for the requested change but the employer arbitrarily and capriciously refuses to consent to the change, then the penalties prescribed by subsection C may be imposed.
Dr. Ruel found that plaintiff's knee lacked 15 degrees flexion and 25 degrees full extension and that she experienced constant pain despite the previous orthoscopic surgery and extensive physical therapy that she had undergone. He opined that plaintiff's condition would not improve unless further orthoscopic surgery was performed. The investigative report of D & D indicated that plaintiff was not a malingerer. To the contrary, the report and the other evidence in the record revealed that plaintiff is a wife and the mother of three children, that she had cared for her sick elderly mother who lived with her, that she had worked as a secretary for Allstate for nearly three years when the accident occurred, that she had been steadily employed for more than ten years as a secretary, bookkeeper, loan processor and pre-school teacher at various businesses prior to her employment at Allstate. Further, Ray Cavignac, plaintiff's supervisor at Allstate, testified that he and his partner were so pleased with her job performance that they had kept her position open for six months hoping she would be able to return to work.
Under these circumstances plaintiff stated sufficient reasons for Hartford to have consented to treatment by Dr. Ruel. Their refusal to do so was clearly arbitrary and capricious, and we find that the hearing officer was correct in ordering a change in physicians and in ordering defendants to pay for plaintiff's medical expenses relating to her treatment by Dr. Ruel.
Defendants also argue the amount of attorney's fees awarded by the hearing officer are excessive. We disagree.
There were two bases for the award of attorney's fees in this case. R.S. 23:1201.2 provides for payment of all reasonable attorney fees where defendants arbitrarily discontinue payments of claims. Also, the arbitrary withholding of consent to plaintiff's request to change physicians made defendants liable for attorney's fees and medical expenses under R.S. 23:1121(C).[1]
When attorney's fees are awarded in a workmen's compensation case because of arbitrary and capricious nonpayment of benefits, the attorney's fees are *75 deemed to be a penalty, and the value of the attorney's fees need not be proven. Levitz v. Furniture Corp. v. Horne, 477 So.2d 824, 828 (La.App. 5th Cir.1985), writ denied, 481 So.2d 633 (La.1986). However, the record contains evidence of the many hours of legal services rendered prior to and during trial and amply supports the award for attorney's fees.
For the foregoing reasons, the judgment of the hearing officer in favor of plaintiff, Kathleen Pekinto and against defendants, The Olsten Corporation and Hartford Fire Insurance Company, is affirmed. The costs of this appeal are assessed against defendants.
AFFIRMED.
SCHOTT, C.J., dissents in part with reasons.
SCHOTT, Chief Judge, dissenting in part:
I concur with my colleagues except as to the imposition of penalties on benefits payable after March 5, 1990. The misrepresentation by Hartford to Dr. Butler caused his initial mistaken impression that plaintiff could return to work in December, 1989, but early in 1990, Dr. Butler learned from plaintiff the true nature of her work. When he certified her as fit for work in March he knew her duties entailed walking and standing and even occasional use of a step ladder. Irrespective of its previous bad faith Hartford could reasonably rely on Dr. Butler's opinion, especially considering that plaintiff had chosen him as her physician. This was not even a situation where it was the "company doctor" clearing the employee for duty, but the employee's own physician. An employer and/or its insurer have the right to rely on such medical advice and discontinue compensation benefits without risking the imposition of penalties.
My colleagues state that upon receipt of Dr. Ruel's opinion Hartford had a duty of further investigation such as a request for more detail from Dr. Ruel or another evaluation from him or another orthopedist. With all due respect, I submit that the law does not support this statement. Dr. Butler was himself an orthopedist and plaintiff's treating physician since the day of her injury in May, 1989. He was well aware of her job requirements and her condition. The mere fact that Hartford received a conflicting report from a newly employed physician did not deprive Hartford of its right to stand pat and rely on Dr. Butler's opinion without exposing itself to penalties. My colleagues also take Hartford to task because it ignored Dr. Ruel's report, even though it was in conflict with Dr. Butler's, and despite D & D's report which showed that plaintiff was disabled. Hartford had every right to ignore Dr. Ruel's report under the circumstances and should not be penalized for doing so. As to the D & D report this showed that plaintiff limped and used a cane. Surely she was disabled; but was she disabled from performing her work duties? Dr. Butler didn't think so when he made his report and he steadfastly maintained this position at the hearing, even when pointedly cross-examined by the Hearing Officer.
I would amend the judgment only to the extent of disallowing statutory penalties on benefits accruing after March 5, 1990.
NOTES
[1] In his reasons for judgment, the hearing officer incorrectly cited R.S. 23:1121(C) as R.S. 23:1123(C).