914 So.2d 566 (2005)
Eileen MOLINERE
v.
VINSON GUARD SERVICE, INC.
No. 2005-CA-0116.
Court of Appeal of Louisiana, Fourth Circuit.
July 13, 2005.
Rehearing Denied January 26, 2006.
*569 John B. Fox, Robert W. "Doc" Booksh, Jr., John Fox & Associates, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
John J. Rabalais, Janice B. Unland, Robert T. Lorio, Rabalais, Unland & Lorio, Covington, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.

RELEVANT FACTS AND PROCEDURAL HISTORY
On October 25, 2001, Plaintiff/Appellant, Eileen Molinere ("Molinere"), filed a Disputed Claim for Compensation with the Louisiana Office of Worker's Compensation alleging that she was hit by a truck and injured while working in a commercial parking lot as a security guard for Defendant/Appellee, Vinson Guard Service, Inc. ("Vinson"). Molinere claimed numerous physical injuries including head, shoulder and back pain, and Post-Traumatic Stress Disorder ("PTSD"). She treated for these injuries and was paid benefits from the time of her accident on November 8, 2000, through July 9, 2001. On July 10, 2001, Molinere returned to work as a security guard for Vinson and allegedly suffered a severe psychological reaction. She has not worked since July 10, 2001.
Trial on the merits commenced on June 12, 2003, and was completed on July 28, *570 2003. The hearing officer issued a final judgment on October 22, 2003, finding that Molinere suffered a physical injury on or about November 8, 2000, which arose out of the course and scope of employment with Vinson; that her weekly compensation rate is $263.15; that her physical injuries had completely resolved by July 10, 2001; that she failed to prove by clear and convincing evidence that she suffered a mental injury for the purpose of receiving indemnity benefits pursuant to La. R.S. 23:1021(7)(b) and (c); that Vinson did not fail to timely pay workers' compensation benefits, and thus penalties and attorney's fees were not warranted; and, that Molinere did not violate La. R.S. 23:1208 by willfully making a false statement or representation for the purpose of obtaining workers' compensation benefits.
Molinere filed, and was granted, a Motion for New Trial. The issues were first, whether Molinere suffered post-traumatic stress as a result of the accident, and if so, when the condition resolved, and second, whether Vinson underpaid the claimant for her benefits. The hearing officer found that in addition to the physical injuries suffered as a result of the accident, Molinere suffered a mental injury, but the mental injury had completely resolved by May 22, 2001; that Molinere was not entitled to any additional benefits as all of her conditions had resolved by the time benefits were terminated on July 10, 2001; and, that Molinere was entitled to an additional $2,105.25 in benefits because her weekly compensation rate was $263.15 and Vinson paid only $203.00 in weekly benefits. Attorney's fees of $3,000.00 and penalties of $2,000.00 were awarded because the Vinson had not timely paid the benefits as required by La. R.S. 23:1201.
In the instant appeal, Molinere asserts the following: that her injuries were not completely resolved on May 22, 2001; that she is entitled to temporary total disability benefits and medical benefits as a result of PTSD suffered on July 10, 2001; that she is entitled to attorney's fees for Vinson's refusal to pay her medical bills resulting from the PTSD; and, that the $3,000.00 award for attorney's fees should be increased. Vinson answers and asserts that Molinere willfully made false statements or representations for the purpose of obtaining compensation benefits, and, that they did timely pay the correct benefits and thus should not have been assessed with penalties and attorney's fees for violating La. R.S. 23:1201.

STANDARD OF REVIEW
We review workers' compensation cases using the manifest error or clearly wrong standard. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). This standard precludes setting aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). In applying the manifest error standard, we need not determine whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart, 617 So.2d at 882. As the Louisiana Supreme Court has stated, "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).

LAW AND DISCUSSION
Molinere's physicians cleared her for work on May 22, 2001, and the court accepted this as the date when her PTSD *571 resolved. Her husband also testified that she could work, but that he did not want her to go back to security work. As support for their argument that Molinere was no longer disabled, Vinson presented video surveillance taken of her in December 2001 and April 2002. The surveillance shows Molinere walking in close proximity to moving vehicles in a crowded Wal-Mart parking lot, driving, pumping gas, carrying her grandson and visiting the Social Security office. When questioned at trial, Molinere testified that she could perform those tasks, but with considerable nervousness and anxiety.
Vinson argues that the discrepancies between the video surveillance and Molinere's testimony prove that, in addition to Molinere exaggerating her injuries, she violated LSA-R.S. 23:1208, which states, in pertinent part,
It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter . . . to willfully make a false statement or representation.
In order for fraud to exist under LSA-R.S. 23:1208, a claimant's statements must be willful and deliberately done with the intent to obtain benefits. Rapp v. City of New Orleans, 98-1714 to 98-1730, p. 11 (La.App. 4 Cir. 12/29/99), 750 So.2d 1130, 1139. A claimant's inconsistent statements are insufficient to prove fraud. Id. Therefore, videotape showing Molinere performing the above tasks does not indicate the resolution of her PTSD because the videotape does not prove Molinere's mental state. Although the videotape may seem to indicate that Molinere is comfortable around moving cars, Molinere testified that there was mental anguish and pain that is not apparent from the videotape. Furthermore, the videotape does not prove that Molinere willfully provided false statements or representations in order to receive workers' compensation benefits. The videotape only highlights inconsistencies in Molinere's testimony, which is insufficient to prove fraud under LSA-R.S. 23:1208.
A mental injury or illness caused by a physical injury to the employee's body is not compensable unless it is demonstrated by clear and convincing evidence. LSA-R.S. 23:1021(7)(c). To prove a matter by "clear and convincing" evidence means to demonstrate that the existence of a disputed fact is much more probable than its nonexistence. Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976).
The trial court must weigh all the evidence, medical and lay, in order to determine if the claimant has met his or her burden. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993). Evidence in the form of motion pictures must be used with great caution because such pictures show only very brief intervals of the activities of the subject. Glover v. Southern Pipe & Supply Co., 408 So.2d 352, 356 (La.App. 4 Cir.1981). They do not show rest periods, reflect whether the subject is suffering pain, or the after-effects of the activities. Id.
More persuasive evidence of the resolution of Molinere's PTSD is the medical evidence of her condition. To carry the burden of proving disability by clear and convincing evidence, a workers' compensation claimant must present objective medical evidence. Daniel v. New Orleans Public Service Inc., 02-2427 (La.App. 4 Cir. 12/3/03), 861 So.2d 721. After her accident on November 8, 2000 and prior to her return to work on July 10, 2001, several physicians treated Molinere; she was released to work on May 22, 2001 by Dr. Dentrinis. After her July 10th accident, *572 Molinere changed psychiatrists and began seeing Dr. Davis, who found that Molinere could not return to work. Dr. Davis, in letters dated August 8, 2001 and May 14, 2003, stated that, contrary to the other physicians' opinions, Molinere still suffered from PTSD and was unable to return to work. Molinere presents Dr. Davis' letters as proof that the PTSD was not resolved on May 22, 2001.
The trial court is in the best position to evaluate the credibility of witnesses and to make the determination as to the appropriate weight to be given. Mamon v. Western Waterproofing Co., 243 So.2d 105 (La.App. 1 Cir.1970). Where the evidence of experts differs, it is the responsibility of the finder of fact to determine which expert is more credible. Angulo v. ATH Painters and Construction, Inc., 98-2363, p. 8 (La.App. 4 Cir. 5/5/99), 733 So.2d 1222, 1226. In regards to physician experts, a court's credibility determination can depend upon factors such as the type of examination the physician performed upon the claimant and the physician's opportunity to observe the claimant. Green v. La. Coca Cola Bottling Co., 477 So.2d 904, 906 (La.App. 4 Cir.1985); see St. Pe v. H.P. Foley Elec. Co., 341 So.2d 639, 641 (La.App. 4 Cir.1977).
In the instant case, seven out of Molinere's eight physicians found that Molinere was able to return to work on May 22, 2001. Also, these seven doctors treated Molinere more extensively than Dr. Davis. The evidence indicates that Dr. Davis's treatment of Molinere was cursory; he merely performed medication checks on her without performing therapy. Given these facts, we cannot disturb the court's credibility determination and agree with the finding that Molinere's PTSD resolved on May 22, 2001.
Molinere asserts that according to Pekinto v. Olsten Corp., 587 So.2d 68, (La.App. 4 Cir.1991), Vinson had a duty to further investigate the extent of her disability before terminating her benefits. Molinere's circumstances are distinguishable from those in Pekinto. In Pekinto, the claimant only saw two physicians; one suggested that the claimant was able to return to work and the other suggested that she was not. Id. at 72. Molinere, on the other hand, had seven out of eight doctors suggest that she was able to return to work. Therefore the medical evidence provided a stronger basis to terminate benefits here than it did in Pekinto. Furthermore, Vinson attempted to further investigate the extent of Molinere's PTSD when Vinson requested that she return to one of her treating physicians for evaluation. Molinere did not appear for the first appointment and refused to appear for the second appointment because the physician would not allow her husband to enter the office. Under these facts and circumstances, Vinson met its duty to investigate the extent of Molinere's PTSD.
Molinere further argues that the trial court erred in failing to impose the burden of proof on Vinson to show that there were any jobs available in the community that fit Molinere's restrictions. In order to receive workers' compensation benefits, a claimant must prove that he is unable to earn at least ninety percent of his pre-injury wage by a preponderance of the evidence. Williams v. Avondale Indus., Inc., 521 So.2d 491, 492 (La.App. 4th Cir.1988). Once a claimant establishes his lost wage-earning capacity, the burden shifts to the employer if he wishes to terminate the benefits. Bastoe v. Burger King Distrib. Serv., 96-0021 to 96-0023, p. 4 (La.App. 4 Cir. 3/19/97), 691 So.2d 274, 277. The employer must prove that the employee is physically able to perform a certain job and that the job was either offered to the employee or that the job *573 was available to the employee in his community. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 739.
Molinere never proved that she would be unable to earn ninety percent of her pre-injury wages. Although she states that she cannot work as a security guard, she provided no evidence that she could not obtain another job in the community that would pay her ninety percent of her wages at Vinson. Because of the lack of evidence of Molinere's lost wage-earning capacity, the burden never shifted to Vinson to prove otherwise.
Molinere further argues that Vinson should be liable for penalties and attorney's fees resulting from the miscalculation of her workers' compensation benefits and from the subsequent termination of those benefits on July 10, 2001. LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not coved by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.
Generally, under LSA-R.S. 23:1201.2, an employer or a workers' compensation insurer is liable for reasonable attorney's fees for terminating benefits when the action is arbitrary, capricious, or without probable cause. Brown v. Manville Forest Products Corp., 565 So.2d 496, 501 (La.App. 2 Cir.), writ denied, 567 So.2d 1127 (La.1990); Winn v. Thompson-Hayward Chemical Co., 522 So.2d 137, 144 (La.App. 2 Cir.1988). Whether or not a termination of or a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Brown v. Manville Forest Products Corp., 565 So.2d at 501. Simple miscalculations are usually not held to be arbitrary and capricious conduct. Id. at 502.
Our review of the record reveals that Vinson was arbitrary and capricious in failing to make an accurate calculation of weekly wages. The discrepancy totaled $2,105.25 through the period of November 8, 2000 through July 9, 2001, and Molinere's attorney informed Vinson several times that the benefits received were less than the statutorily required payment. Furthermore, Vinson failed to account for the miscalculation or to reasonably controvert the claim. The hearing officer therefore was correct in granting Molinere's request for penalties and attorney's fees resulting from this miscalculation.
Vinson's refusal to pay Molinere's benefits after July 9, 2001 was not arbitrary and capricious, however. The court established that Molinere's PTSD was resolved on May 22, 2001. Therefore, *574 she was no longer eligible for workers' compensation benefits. These recommendations gave Vinson probable cause to terminate Molinere's benefits. Vinson's decision to terminate therefore was not arbitrary and capricious.
For the foregoing reasons, we AFFIRM the trial court's judgment with each party to bear their own costs.
AFFIRMED.