PATRICIA RIVET MURRAY, Judge.
| plaintiff, Mary Thonn, appeals the judgment of the workers’ compensation court denying her Motion to Compel Medical Evaluation. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Ms. Thonn was injured in an employment-related accident on October 18, 2000, when she tripped and fell over a box while working as an x-ray technician at Slidell Memorial Hospital [“SMH”]. She was initially treated for her injuries by her orthopedist, Dr. James Butler. On September 7, 2001, the workers’ compensation court entered a consent judgment stipulating that the claimant’s injuries and resulting disability were causally related to her accident, entitling Ms. Thonn to compensation benefits as well as to payment by SMH of “reasonable and necessary medical treatment by Dr. Butler” for the injuries she sustained in the accident.
In May, 2003, counsel for Ms. Thonn sent a letter to SMH requesting that they pay for her to be evaluated by another physician, Dr. R. Vaclav Hamsa. Without receiving authorization, Ms. Thonn saw Dr. Hamsa in July. On August 7, 1⅞2003, Ms. Thonn’s attorney forwarded to SMH the report of Dr. Hamsa, of the Metairie Or-thopaedic Clinic, which report recommended that Ms. Thonn undergo a disco-gram CT study. SMH took the position that Dr. Butler, not Dr. Hamsa, was the claimant’s chosen orthopedist and that the testing recommended by Dr. Hamsa was *992 unnecessary and had not been established as being related to the claimant’s accident.
On April 28, 2004, Ms. Thonn filed a Disputed Claim for Compensation and a Motion to Compel Medical Evaluation and Treatment. In her motion, claimant sought to compel SMH to authorize the discogram CT recommended by Dr. Hamsa, to authorize an additional evaluation by a urologist, Dr. Neil Baum, and to be assessed penalties and attorney’s fees for its continuing refusal to pay for her treatment by Dr. Hamsa. Following a hearing on June 4, 2004, the workers’ compensation court rendered judgment on June 8, 2004, ordering that the claimant undergo an initial evaluation by Dr. Baum and a re-evaluation by Dr. Butler before the court would decide whether to authorize the discogram, and reserving ruling on all other issues until an evidentiary hearing could be held.
The evidentiary hearing was held on November 4, 2004. Prior to the hearing, Ms. Thonn indicated that she was no longer seeking authorization for the discogram. The workers’ compensation court framed the issues before it as follows:
(1) Did the claimant choose Dr. Butler as her orthopedist?
|s(2) Assuming the claimant chose Dr. Butler, should she be allowed to change her choice to Dr. Hamsa?
(3) Are the claimant’s urinary complaints related to her accident, and is she entitled to treatment by Dr. Baum for those complaints?
(4) Is the claimant entitled to penalties and attorney fees for her employer’s failure to pay medical benefits timely under La. R.S. 23:1201?
By judgment rendered January 26, 2005, the workers’ compensation court found that Ms. Thonn made an “informed” choice of Dr. Butler as her treating orthopedist and that she was not entitled to change to Dr. Hamsa because she failed to prove any medical reason that would necessitate such a change; that the claimant failed to prove that her urinary problems were related to the October 18, 2000, accident; and that the defendant, SMH, was not liable for its failure to timely authorize and pay medical benefits under La. R.S. 23:1201 because it had reasonably controverted the claim.
DISCUSSION
Ms. Thonn now appeals the January 26, 2005 judgment. On appeal, she assigns as errors only the lower court’s finding that SMH reasonably controverted her right to be treated by Dr. Hamsa and the court’s failure to award penalties and attorney fees based upon this conclusion; and secondly, the court’s finding that Ms. Thonn failed to show a reasonable basis for changing her choice of treating orthopedists from Dr. Butler to Dr. Hamsa.
14These are factual issues. It is well settled that factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Booker v. International Rivereenter, 04-1980 (La.App. 4 Cir. 6/22/05), 905 So.2d 498. Therefore, the issue to be resolved by this court is not whether the workers’ compensation court was right or wrong, but whether its conclusion was a reasonable one based on the entire record. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Appellant first challenges the lower court’s finding that SMH is not liable for failing to timely authorize and pay for her initial visits to Dr. Hamsa because SMH reasonably controverted the claim. La. R.S. 23:1201 provides, in pertinent part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
*993 F. Failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians... shall result in the assessment of a penalty.. .together with reasonable attorney fees for each disputed claim....
⅜ ⅜ ⅜ ⅜ ⅜
(2) This subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
The Louisiana Supreme Court has stated that in order to “reasonably controvert” a claim, the defendant must have some valid reason or evidence |supon which to base its denial of benefits. Brown v. Texas-La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890. The Court further stated:
Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S, 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.... If an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his controversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward.
Brown v. Texas-LA Cartage, Inc., supra, at pp. 9-10, 721 So.2d at 890-891 (Emphasis added.).
In this appeal, Ms. Thonn does not argue that the workers’ compensation court erred by finding that Dr. Butler was her original choice of physicians. She in fact admitted at trial that she had signed the choice of physician form introduced as evidence, which form clearly states:
I understand that I have the choice of physician for treatment of my job-related illness or injury.
I also understand that I may not change physicians without the consent of the employer or the workers’ compensation insurer.
At trial, Ms. Thonn contended that she was entitled to change her choice of physicians to Dr. Hamsa because Dr. Hamsa specialized in pain management. Ms. Thonn also testified at trial that she saw Dr. Hamsa because she wanted a second opinion.
SMH argues that under the law, Ms. Thonn was not entitled to change her choice of orthopedists without proving that there was a medical necessity for the change. La. R.S. 23:1121(B) provides, in pertinent part:
LThe employee shall have the right to select one treating physician in any field or specialty.... After his initial choice, the employee shall obtain prior consent from the employer or his workers’ compensation carrier for a change of treating physician within that same specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty-
This court has previously held that the last sentence of the above-quoted provision does not give an employee the right to select multiple treating physicians at the same time. Jasper v. Memorial Medical Center, 03-0489, pp. 3-4 (La.App. 4 Cir. 6/11/03), 853 So.2d 21, 23. Moreover, because the workers’ compensation law only requires the employer to pay for treatment that is medically necessary (see La. R.S. *994 23:1203), the courts have consistently held that a claimant who wishes to change his or her choice of treating physicians must prove the medical necessity for the treatment to be provided by the new physician. See Lang-Parker v. Unisys Corporation, 00-0880, p. 10 (La.App. 1 Cir. 10/5/01), 809 So.2d 441, 449; Lemoine v. Hessmer Nursing Home, 94-836, p. 18 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 454; Pekinto v. Olsten Corporation, 587 So.2d 68, 74 (La.App. 4th Cir.1991).
In the instant case, the workers’ compensation court found that SMH reasonably controverted the plaintiffs claim because SMH had no information to show either that Dr. Hamsa practiced in a different field than Dr. Butler or that the switch to Dr. Hamsa was medically necessary. After reviewing the record, we find that the evidence supports the conclusion of the workers’ compensation court. Dr. Butler’s records show that he never discharged Ms. Thonn, and that on her last visit with him before she went see Dr. Hamsa, Dr. Butler approved Ms. Thonn’s return to light-duty work 17and requested to see her again in three months. Neither physician testified at trial. In his deposition, introduced at trial, Dr. Butler testified he did not refer Ms. Thonn to Dr. Hamsa. Ms. Thonn corroborated this fact.
The initial letter dated May 15, 2003, to HSLI (Hospital Services for Louisiana, Inc., the third party administrator of workers’ compensation claims for SMH) by Ms. Thonn’s counsel requesting approval for her treatment by Dr. Hamsa gives no reason for the change of physicians nor any indication that Dr. Hamsa specialized in anything other than orthopedics. None of the subsequent correspondence between the parties contains any indication that Dr. Hamsa specialized in pain management. Dr. Hamsa’s February 6, 2004, report documenting his treatment of Ms. Thonn, which was forwarded to HSLI, is written on the letterhead of “Metairie Orthopaedic Clinic.” There was no evidence introduced at trial to show that Dr. Hamsa specialized in pain management. In fact, the documents in the record indicate that both he and Dr. Butler were treating Ms. Thonn similarly, by prescribing pain medication and giving injections. Dr. Hamsa’s report on his treatment of Ms. Thonn also indicates that Dr. Hamsa intended that his findings be shared with Dr. Butler.
Mr. Robert Hilborn, senior claim consultant for HSLI, testified that when HSLI received the initial request for treatment of Ms. Thonn by Dr. Hamsa, HLSI sought the advice of its legal counsel, who opined that as Dr. Butler was Ms. Thonn’s treating orthopedist, no further treatment by any other orthopedist need be authorized. As HSLI received no further information to alter this opinion, it continued to withhold payment. However, when Dr. Butler was deposed on October 15, 2004 (approximately |stwo weeks prior to the Nov. 4th hearing), he stated that although he did not refer Ms. Thonn to Dr. Hamsa, he now preferred that she be treated by Dr. Ham-sa for pain management. After receiving this information, on October 26, 2004, HLSI sent a letter to Ms. Thonn’s counsel approving treatment by Dr. Hamsa for pain management only, with Dr. Butler remaining her treating orthopedist.
Considering the record, we cannot say that the determination of the workers’ compensation court was manifestly erroneous. The record clearly supports both the lower court’s conclusions: that the defendant, SMH, reasonably controverted Ms. Thonn’s claim, and that Ms. Thonn failed to meet her burden of proving there was a medical necessity for her to change her treating orthopedist to Dr. Hamsa. Accordingly, we find that the workers’ compensation court did not err by declining to assess penalties or attorney fees against SMH.
*995 CONCLUSION
For the reasons stated, the judgment of the workers’ compensation court is affirmed.
AFFIRMED.