47 So.3d 992 (2010)
Larry DUPLESSIS
v.
TULANE UNIVERSITY MEDICAL CENTER.
No. 2010-CA-0267.
Court of Appeal of Louisiana, Fourth Circuit.
August 25, 2010.
*993 Jeanne Andry Landry, Arthur W. Landry, Arthur W. Landry and Jeanne Andry *994 Landry, LLC, New Orleans, LA, for Plaintiff/Appellant.
Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, Metairie, LA, for Defendant/Appellee.
Court composed of Judge PATRICIA RIVERT MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.
Judge PATRICIA RIVET MURRAY.
This is a workers' compensation case. The employee, Larry Duplessis, appeals the judgment of the Office of Workers' Compensation ("OWC") dismissing his claim for permanent and total disability benefits ("PTD") against his former employer, Tulane University Medical Center ("Tulane"). The sole issue on appeal is whether the OWC was manifestly erroneous in finding that Mr. Duplessis failed to prove by clear and convincing evidence that he was unable to work. Finding manifest error, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
On September 5, 2003, Mr. Duplessis, then sixty-one years old, sustained a work-related back injury while employed as a construction supervisor for Tulane. Until May 1, 2007, Mr. Duplessis was paid temporary total disability benefits ("TTD").[1] On that date, the TTD benefits were discontinued based on the opinion of Mr. Duplessis' treating physicianDr. James Butler, an orthopedic surgeonthat he was capable of working. Also in 2007, Dr. Butler approved eleven different sedentary jobs for Mr. Duplessis, identified by the vocational case manager, Kathleen Riche. Mr. Duplessis failed to apply for any of the jobs. In January 2008, Mr. Duplessis filed a disputed claim for compensation-PTD. In August 2009, the OWC rendered judgment dismissing Mr. Duplessis' claim with prejudice. This appeal followed.

DISCUSSION
In a workers' compensation case, the appropriate standard of review applied to the OWC's factual findings is the manifest error-clearly wrong standard. Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. The manifest error standard applies even when, as in the instant case, the OWC's decision is based upon written reports, records or depositions. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992). In applying the manifest error standard, the issue to be decided is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
An employee's entitlement to PTD is governed by Louisiana Revised Statutes 23:1221(2)(c), which provides:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, *995 sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
Pursuant to La. R.S. 23:1221(2)(c), even if an employee seeking PTD is in pain, he must work unless he proves by clear and convincing evidence that he is physically unable to engage in any type of employment whatsoever, including self-employment. Daniel v. New Orleans Public Service Inc., 02-2427 (La. App. 4 Cir. 12/3/03), 861 So.2d 721. The clear and convincing standard is a heavier burden of proof than the usual civil preponderance of the evidence standard but less burdensome than the beyond a reasonable doubt standard used in criminal law. Daniel, 02-2427 at p. 6, 861 So.2d at 725-26.
To carry the burden of proving disability by clear and convincing evidence, a workers' compensation claimant must present objective medical evidence. Molinere v. Vinson Guard Service, Inc., 05-0116 (La.App. 4 Cir. 7/13/05), 914 So.2d 566. Stated otherwise, to satisfy the elevated burden of proving by clear and convincing evidence, the jurisprudence has recognized that a claimant must introduce medical evidence of a disability. See Jackson v. Domtar Industries, Inc., 98-1335, pp. 6-7 (La.App. 3 Cir. 4/7/99), 732 So.2d 733, 738; Scherer v. Interior Plant Design, 98-702 (La.App. 3 Cir. 10/28/98), 724 So.2d 797. In the absence of such evidence, a claimant's demand for PTD fails. Williams v. Children's Hosp., 07-464 (La. App. 4 Cir. 1/23/08), 996 So.2d 291.
In this case, the existence of a work-related accident is undisputed. The dispute is Mr. Duplessis' ability to return to work, which determines his entitlement to PTD. Based on our review of the record, we find the OWC was manifestly erroneous in concluding that Mr. Duplessis failed to meet his burden of establishing he was entitled to PTD.
At trial, Mr. Duplessis testified that his back pain prevents him from performing household duties. He explained that his back pain requires him to lie down, off and on, for about eight hours a day. He further testified that in addition to treating with Dr. James Butler for back pain he also was treating with Dr. Joshua Lowentritt for high blood pressure, Dr. Mario McNally for diabetes, Dr. Richard Meyer for leg and knee problems (not connected with his back injury), and Dr. Ronald Swartz, a urologist. He acknowledged that he can drive his pickup truck, shop with his wife, do limited cooking, and walk on the treadmill for short periods of time to help control his diabetes. Mr. Duplessis explained that he failed to apply for any of the jobs Ms. Riche identified because of his back pain, because of the numbness in his legs and feet, and because carpentry work is the only type of work he knows how to perform.
Paulette Duplessis, Mr. Duplessis' wife, corroborated her husband's testimony regarding his daily activities, including his need to lie down periodically during the day. She also testified that Mr. Duplessis cannot do things around the house that he was able to do before the accident. She acknowledged, however, that he can drive his truck to the grocery store and the pharmacy. He also can cut the grass with the help of their son if he takes breaks.
To support his PTD claim, Mr. Duplessis introduced at trial the testimony of Dr. Wilmot F. Ploger, an orthopedic surgeon. Dr. Ploger testified that he saw Mr. Duplessis once on November 20, 2007. Based on the x-ray taken that day, Dr. Ploger opined that Mr. Duplessis' lumbar fusion was not solid and thus the fusion had failed. Based on that one office visit, Dr. Ploger rendered a written opinion that "due to Mr. Duplessis' age, his multiple *996 medical conditions particularly his labile diabetes and his failed lumbar fusion that he is unable to return to work at this time." Dr. Ploger reiterated this opinion at trial. He testified that he "thought that his multiple conditions made him unemployable." He further opined that the symptoms caused by the failed fusion prevented Mr. Duplessis from working. Dr. Ploger explained that "[b]ecause he had limited motion, and he had constant pain, and he had numbness, and he had difficulty moving about and changing positions. I think all of those things produced the pain in his back, which he was-which made him unemployable." Dr. Ploger, acknowledged that he rendered the opinion without asking Mr. Duplessis what types of activities he was able to perform around the house on a daily basis. Although Dr. Ploger disagreed with Dr. Butler's opinion that Mr. Duplessis could perform sedentary work, he agreed with Dr. Butler's opinion that there was some evidence of symptom exaggeration.
On cross-examination, Dr. Ploger testified that some of Mr. Duplessis' complaints of pain in his legs and feet and numbness on the soles of his feet could also be attributed to his diabetes. Dr. Ploger further testified that Mr. Duplessis' complaints of pain and numbness in his arms are not related to the condition in his lower back, or to the back surgeries. He believed that the arthritis in Mr. Duplessis' neck may have played a part in the arm pain. Dr. Ploger stated that he did not perform further diagnostic testing to determine the source of all of Mr. Duplessis' complaints of pain.
At trial, Tulane introduced Dr. Bulter's deposition and his medical records. Dr. Butler testified that he began treating Mr. Duplessis shortly after the 2003 accident. Dr. Butler diagnosed Mr. Duplessis with herniated lumbar discs at L4-5 and L5-S1 with nerve root compression. He performed two surgeries on Mr. Duplessis: a lumbar laminectomy and discectomy in November 2003; and a laminectomy, discectomy, nerve root decompression, and fusion from L4 to L5 in June 2004. Following the surgeries, Mr. Duplessis continued to complain of pain. Dr. Butler referred Mr. Duplessis to Dr. Jacques Whitecloud, who administered epidural steroid injections. In December 2005, Dr. Whitecloud released Mr. Duplessis to sedentary part-time work. Mr. Duplessis continued to treat with Dr. Butler with complaints of back and leg pain.
As noted above, in May 2007 Dr. Butler opined that Mr. Duplessis was capable of working and approved the sedentary jobs that Ms. Riche presented to him. Although Dr. Butler acknowledged that the x-ray taken by Dr. Ploger in 2007 revealed that the fusion may be incomplete, he testified that the x-ray findings did not change his opinion that Mr. Duplessis was capable of performing sedentary work. Dr. Butler, however, agreed that in light of the November 2007 x-rays "it is possible that there may be a nonunion of the fusion as well as scar formation causing or contributing to his pain." Dr. Butler also testified that he believed Mr. Duplessis exhibited signs of symptom magnification.
Tulane also introduced the deposition testimony of Marc Cavallino, a physical therapist who attempted to perform a functional capacity evaluation ("FCE") on Mr. Duplessis in July 2007. Mr. Cavallino stated that Mr. Duplessis was unable to complete the FCE due to his complaints of pain. However, based on the portion of the FCE that was completed, Mr. Cavallino identified a significant number of nonorganic pain behaviors (complaints that do not have a physiological basis). Mr. Cavallino noted in his evaluation that Mr. Duplessis did not believe he could perform any type of work.
*997 Finally, Tulane presented the testimony of Kathleen Riche, who was qualified as an expert in the field of vocational rehabilitation. Ms. Riche testified that she met with Dr. Butler to make sure that he felt Mr. Duplessis was capable of returning to work, released to drive, capable of performing sedentary work, and needed no further medical treatment. Ms. Riche testified that Dr. Butler confirmed his opinion on these matters in writing. Thereafter, she found eleven sedentary jobs for Mr. Duplessis, which Dr. Butler medically approved. She testified that Mr. Duplessis declined to apply for any of the jobs. On cross-examination, Ms. Riche acknowledged that when she prepared the job descriptions she was unaware that Mr. Duplessis had a failed fusion. She further acknowledged that at none of the sedentary jobs she found for Mr. Duplessis was there a provision made for him to lie down periodically during the day.
Mr. Duplessis had the burden of establishing by clear and convincing evidence that he is physically unable to engage in any type of employment as a result of his work-related injury. In support of his claim, he relied on Dr. Ploger's opinion that his age (sixty-seven years old at the time of trial) and multiple medical conditions made him unemployable. In contrast, Dr. Butler, who treated Mr. Duplessis for nearly four years (from 2003 to 2007), opined that Mr. Duplessis was capable of performing sedentary work and approved eleven different jobs that he could perform. Mr. Duplessis contends that Dr. Butler's opinion was based on his mistaken belief that the fusion was stable. Dr. Butler, however, declined to change his opinion that Mr. Duplessis was capable of working even after being shown the 2007 x-ray revealing the fusion was incomplete.
As a general rule the testimony of a treating physicianin this case Dr. Butlershould be accorded greater weight than that of a physician who examines a patient only once or twice. Williams v. Wal-Mart Stores, Inc., 00-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134. However, the treating physician's testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Id. Although Dr. Butler approved the sedentary jobs for Mr. Duplessis, Ms. Riche, the vocational rehabilitation expert, acknowledged that she was unaware that Mr. Duplessis had a failed fusion when she located those jobs. Ms. Riche also acknowledged that none of those jobs made provision for Mr. Duplessis to lie down periodically during the day, which both Mr. Duplessis and his wife testified he needed to do. Mr. Cavallino, who performed the FCE, agreed that Mr. Duplessis' need to lie down periodically during the day would impinge upon his ability to work. Moreover, Mr. Duplessis not only had a failed fusion, but also had multiple other medical problems. Dr. Ploger opined that Mr. Duplessis' failed fusion coupled with his other medical conditions rendered him unemployable. We agree.
Taken together, we find the evidence in the record supports a finding that the OWC was manifestly erroneous in concluding that Mr. Duplessis failed to meet his burden of proving his entitlement to TTD. Our finding is consistent with the jurisprudential rule that the workers' compensation act is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La. 1989). Stated otherwise, it is well-settled that the workers' compensation act is remedial and that to effectuate the humane policies it reflects the law is to be liberally construed in the injured employee's favor. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993).

DECREE
For the foregoing reasons, the judgment of the OWC dismissing Mr. Duplessis' *998 claim is reversed; and this case is remanded for further proceedings.
REVERSED AND REMANDED.
LOVE, J., dissents and assigns reasons.
LOVE, J., dissenting.
I respectfully dissent from the majority decision. The issue before this Court is whether the OWC properly concluded that Mr. Duplessis failed to prove, by clear and convincing evidence, that he is physically incapable of engaging in any employment. Appeals concerning the factual findings of a workers' compensation judge are subject to the manifest error standard of review. Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. Under the manifest error standard, the reviewing court is to assess not whether the factfinder's decision was right, but rather, whether the decision was a reasonable one in light of the record. As such, reasonable evaluations of witness credibility and reasonable inferences of fact should not be disturbed by the appellate court. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
After reviewing the record, I find that, based on Dr. Butler's testimony, the OWC's decision was reasonable, and not manifestly erroneous. Generally, the testimony of the treating physician should be accorded greater weight than the testimony of a physician who examines a patient only once or twice. Williams v. Wal-Mart Stores, Inc., 00-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134. Mr. Duplessis relied on the testimony of Dr. Ploger, an orthopedic surgeon who only examined Mr. Duplessis once, to establish that Mr. Duplessis was physically incapable of engaging in any type of employment. The appellee, Tulane University, introduced the testimony of Dr. Butler, Mr. Duplessis' treating physician, to support its contention that Mr. Duplessis was capable of engaging in part-time sedentary work. Even with Dr. Ploger's x-ray findings, which revealed a failed lumbar fusion, Dr. Butler maintained that Mr. Duplessis was capable of employment. While Dr. Ploger had a medical basis for his determination, the OWC judge found Dr. Ploger's testimony to be less convincing than that of Dr. Butler, Mr. Duplessis' treating physician for nearly four years.
Trial courts are faced with the task of determining the veracity of witness testimony and weighing evidence. When there are two permissible views of evidence, the fact-finder's choice between them cannot be manifestly erroneous. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). Both Dr. Ploger and Dr. Butler presented plausible determinations on Mr. Duplessis' capability to return to work, yet the OWC found Dr. Butler's findings more credible. As such, because I do not find that the choice between the two testimonies was clearly wrong, I find no basis for this Court to reverse the OWC decision.
NOTES
[1] Mr. Duplessis acknowledges in his brief that Tulane also paid him Supplemental Earnings benefits ("SEB").